UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Delois Beard,

    Plaintiff,

v.                                                       Case No.: 09-14644
                                                      Honorable Sean F. Cox

Allstate Indemnity Co.,

    Defendants.

_____/

## OPINION & ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Delois Beard ("Plaintiff"), brought this action against Plaintiff's property insurer, Defendant Allstate Indemnity Co. ("Defendant"), alleging state breach of contract claims after Defendant denied Plaintiff's fire-loss claim. The matter is currently before the Court on Defendant's Motion for Summary Judgment or for Declaration of Rights. Plaintiff has also requested a declaration of her rights under the insurance policy. The parties have fully briefed the issues and the Court heard oral argument on June 30, 2011. For the reasons set forth below, the Court shall DENY Defendant's Motion for Summary Judgement and rule that the actual cash value of Plaintiff's damaged property is equal to the replacement cost of the damaged or destroyed property less depreciation. The Court also finds that the actual cash value of Plaintiff's damaged or destroyed property is $150,043.24.

### BACKGROUND

On November 6, 2003, Plaintiff purchased property located at 17268 Meonart, Detroit, Michigan 48212, along with two other properties from the same seller, for a total purchase price

of $65,002.00.  (Plf's Resp, Doc. No. 28, Ex. 1).  Plaintiff purchased two of the properties, including the property at 17268 Meonart, by quitclaim deed for $1.00 each.  *Id*.  Plaintiff purchased the third property by warranty deed for $65,000.  *Id*.

The 17268 Meonart property was originally a single family bungalow-style home that was converted into two separate, residential flats.  (Plf's Resp. at 2).  Plaintiff insured the 17268 Meonart property with Defendant on an actual cash value basis for $309,058.00.  (Def's Mtn., Doc. No. 16, Ex. 2).

On July 1, 2006, Plaintiff executed a rental agreement with tenant Quante Pryor for the second-floor flat.  (Plf's Resp. at 2).  Mr. Pryor agreed to pay a monthly rental payment of $400.  *Id*.  On October 1, 2006, Plaintiff executed a rental agreement with tenant Chevon Edwards for the first-floor flat.  Ms. Edwards agreed to pay a monthly rental payment of $450.  *Id*.

An essential issue to both parties' claims is when, if it all, the property became vacant prior to the fire that occurred on December 21, 2008.  Mr. Pryor moved out of 17268 Meonart in May 2008.  Plaintiff alleges that Ms. Edwards moved out of the property sometime after Plaintiff received an eviction judgment against Ms. Edwards on September 26, 2008. (Plf's Resp., Ex. 6,7).  Defendant, however, alleges that Ms. Edwards moved out of the home on August 17, 2008. (Def's Mtn. at 2).

On January 5, 2009, Plaintiff reported the fire damage to Defendant.  *Id*. at 3.  The next day, Plaintiff retained Donan Engineering Co., Inc. ("Donan") to determine the origin and cause of fire at Plaintiff's property.  Donan concluded that "[t]he cause of the fire is the intentional ignition of available combustible materials in two separate areas of the second level by an open flame." (Plf's Resp., Ex. 13).  On January 7, 2009, Plaintiff received a damage and repair cost

estimate by CBJ Construction ("CBJ"). (Def's Mtn., Ex. 9). CBJ estimated the damage and repair costs to total $615,180.50. *Id*.

Defendant alleges that on January 15, 2009 Defendant requested that Plaintiff file a Sworn Statement in Proof of Loss ("POL"), which is required by the insurance policy after a policy holder files a claim. *Id*. at 2. Plaintiff states that she does not remember receiving a letter requesting the POL. (Def's Mtn., Ex. E at 62).

On January 21, 2009, following CBJ's damage and repair estimate, Defendant retained Crawford & Company ("Crawford") to conduct its own estimate of the damage and repair costs. (Plf's Resp. at 4). Crawford estimated the actual cash value of the home to be $150,043.24 and estimated a net claim, if depreciation is recovered, of $260,140.95. (Plf's Resp., Ex. 10). Defendant also obtained a market value appraisal on April 7, 2009, and the appraiser valued the property at $5,000 one day before the fire. (Def's Mtn., Ex. I).

On May 27, 2009, Defendant denied Plaintiff's claim in its entirety. (Plf's Resp., Ex. 11). Plaintiff filed her complaint, alleging breach of contract, on November 30, 2009. (Doc. No. 1). On November 22, 2010, Defendant filed the instant Motion for Summary Judgment or for Declaration of Rights.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the

3

pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Defendant contends that it properly denied Plaintiff's claim because: (1) Plaintiff's statement of damages is fraudulent; (2) Plaintiff's property was vacant for longer than permitted by the policy; and (3) Plaintiff did not provide Defendant with a substantially complete Proof of Loss statement.

**I.   Defendant's Fraud Defense Fails.**

First, Defendant alleges that Plaintiff's claim was properly denied because Plaintiff's claim "is so excessive so as to constitute fraud." (Def's Br. at 1). Defendant states that "Plaintiff purchased the property for possibly nothing, insured it, left it to be vacant and unsecured and then made the claim of $615,180.50 and reasserted that amount in her lawsuit." In support of this claim, Defendant simply states that "the circumstances here are so egregious so as to allow the court to evaluate this is[sic] as a matter of law." *Id.* at 2.

If an insurer relies on the affirmative defense of fraud or false swearing on the part of the insured for its basis in denying an insured's claim, the insurer has the burden of proof of

establishing fraud by a preponderance of the evidence. *See Michigan Basic Property Ins. Ass'n v. J.T. Hari Designs*, 1999 WL 33409938 (Mich.App 1999).

In evaluating an insurer's affirmative defense of fraud on the part of an insured, Michigan Courts have stated:

> Fraud or false swearing implies something more than mistake of fact or honest misstatements on the part of the insured. It may consist of knowingly and intentionally stating upon oath what is not true, or stating a fact to be true although the declarant does not know if it is true and has no grounds to believe that it is true. In order to prevail, the insurer must prove not only that the swearing was false, but also that it was done knowingly, wilfully, and with intent to defraud. Fraud cannot be established from the mere fact that the loss was less than was claimed in the preliminary proofs furnished to the insurer.

*Mina v. General Star Indemnity Co.*, 218 Mich.App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich. 866 (1997).

To void a policy for wilful misrepresentation of a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. *Id*.

There is no question that the amount of damages submitted for an insurance claim is a material fact in assessing the claim. Defendant, however, has not established that Plaintiff knew that her claim was false, or that Plaintiff made her claim recklessly and without any knowledge of its truth.

In this case, Plaintiff submitted a nine page estimate from CBJ, which included a full itemized ledger that detailed the cost of each repair for the home, and concluded that the repairs

would cost $615,180.50.  (Plf's Resp., Ex. 9).  While Plaintiff's estimate of damages and repairs for her property is far greater than Defendant's estimate, Defendant has not pointed to any evidence of fraudulent intent on the part of Plaintiff.  Furthermore, even if Plaintiff's claim is excessive, Plaintiff admits that she is only entitled to the full amount of the policy limits ($309,058.00).  (Plf's Resp. at 6).

When a party alleges fraud on the part of an opposing party, the intent of the party is generally a question of fact.  *Harris v. Lapeer Public School System*, 114 Mich.App. 107, 115; 318 N.W.2d 621, 625 (1982).  Here, because Defendant has provided no evidence of fraud, reasonable minds could differ as to whether Plaintiff made fraudulent misrepresentations when she filed her claim.  Defendant has not established fraud by a preponderance of the evidence.

## II.     There is a Genuine Issue of Material Fact as to Whether Plaintiff's Property was Vacant for More Than 90 Days.

Defendant also contends that Plaintiff's complaint should be dismissed because the property was vacant for more than 90 days prior the fire.

Donan determined that the cause of the fire that damaged Plaintiff's property was the intentional ignition of available combustible materials by an open flame.  Plaintiff's insurance policy defines vandalism as "willful or malicious conduct resulting in damage or destruction of property."  (Plf's Resp., Ex. 14 at 3).  Therefore, Plaintiff's property was damaged as a result of vandalism, as defined by Plaintiff's insurance policy.

Moreover, Plaintiff's insurance policy provides:

> *Losses We Do Not Cover Under Coverages A and B:*
> A. We do not cover loss to the property... consisting of or caused by:
> \* \* \*
> 18. **Vandalism.**  However, we do cover sudden and

> accidental direct physical loss caused by fire resulting from vandalism unless your dwelling has been vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism.

*Id.* at 7, 9.

Here, Defendant claims that Plaintiff's property was vacant for longer than the 90-day period provided for in the policy, and therefore Defendant is not required to cover any loss resulting from the vandalism. Defendant contends that the property became vacant on August 17, 2005, and "there is no dispute about the vacancy for 125 days before the loss." (Def's Br. at 3).

Plaintiff, however, has created a genuine issue of material fact as to whether the property was vacant for 90 days before the fire. Initially, Plaintiff indicated during her examination under oath that the last tenant at the property, Ms. Edwards, moved out on August 17, 2008. (Plf's Dep. at 35). Plaintiff also states that she filed a Complaint for Non-Payment of Rent against Ms. Edwards on September 16, 2008. Additionally, Plaintiff submitted a judgment from the 36th District Court, issued September 26, 2008. (Plf's Resp., Ex. 7). The judgment stated, "An order evicting you [Ms. Edwards] will be issued unless you pay the plaintiff or court the amount due . . . on or before 10-6-09." *Id.* Plaintiff alleges that Ms. Edwards had not moved out by the time the judgment had been issued. When questioned about the judgment from the 36th District Court, Plaintiff testified:

> Q: You're simply stating that even before this Judgment was entered they had already moved?
> A: No.
> Q: It looks like this Judgment was entered in September, ma'am. I thought you told me that they had moved out on August 17th?
> A; That's the date they were supposed to be out of there by,

|   |   |   |
|---|---|---|
| | | August 17th. |
| | Q: | What does it say on there? |
| | A: | No, because we went to court before then. They moved out in August. Maybe this the papers they sent me. |
| | Q: | You were pretty confident when we talked earlier that they had moved out August 17th. |
| | A: | That's what I thought. |
| | Q: | Okay. Let me see. |
| | A: | I thought it said August 17th. |
| | | * * * |
| | A: | Maybe it was October. I don't know. I don't even remember now. |

(Plf's Dep. at 50-51).

Thus, Plaintiff's examination suggests that she may have been mistaken when she initially stated that Ms. Edwards moved out on August 17, 2008, and Ms. Edwards may have moved out as late as October 2008. Taking Plaintiff's statements in a light most favorable to Plaintiff, and viewing them in light of the court judgment dated September 26, 2008 indicating that Ms. Edward's had to move out by October 6, 2008, Plaintiff has created a issue of material fact as to whether the house was vacant for 90 days prior to the fire. If Ms. Edwards moved out of Plaintiff's home after the September 26, 2008 judgment, as Plaintiff alleges, then the 90-day vacancy exception to damage caused by vandalism does not apply, and Defendant must still cover the damage to Plaintiff's property.

### III. Defendant Has Failed to Show That it was Prejudiced by Plaintiff's Failure to Submit a Statement of Loss.

Finally, Defendant asserts that Plaintiff's complaint should be dismissed because Plaintiff failed to submit a Proof of Loss to Defendant after the fire occurred. Plaintiff's insurance policy reads, in part:

**What You Must Do After a Loss**

8

> In the event of a loss to any property that may be covered by this policy, you must:
>
>> g) within 60 days after the loss, give us a signed, sworn proof of the loss. This statement must include the following information:
>
> * * *
>
> We have no duty to provide coverage under this section if you, an insured person, or a representative of either fail to comply with items a) through g) above, ***and this failure to comply is prejudicial to us.***

(Plf's Resp., Ex. 14 at 16-17) (emphasis added).

The insurance policy also states:

> **Action Against Us**
>
> No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions applies, unless:
>
>> a) there has been full compliance with all policy terms; and
>> b) the action is commenced within one year after the inception of loss or damage.

(Def's Mtn, Ex. J at 20).

In support of its position, Defendant's relies on *Dellar v. Frankenmuth Mut. Ins. Co.*, 173 Mich.App. 138; 433 N.W.2d 380 (1988) and *Reynolds v. Allstate Insurance Co.*, 123 Mich.App. 488; 332 N.W.2d 583 (1983).

In *Reynolds*, the Michigan Court of Appeals dismissed a plaintiff's action against an insurer for not complying with the insurance policy's requirement that the insured submit a proof of loss within 60 days of the property loss. Similarly, in *Dellar*, the Michigan Court of Appeals held that, "the failure to file a signed and sworn proof of loss within sixty days of the loss bars recovery on a claim without regard to whether the insurer is prejudiced by such failure." *Dellar*,

9

173 Mich.App. 138 at 144.

In *Dellar*, however, the Court allowed the plaintiff to submit to the jury a question of fact regarding the issue of the insurer's waiver of the contractual deadline. In doing so, the Court stated,

> [T]he facts of this case clearly demonstrate that, whatever purpose might exist for the requiring of the filing of a sworn proof of loss, such purpose was fulfilled. Clearly there was immediate notice, a full investigation, a pending criminal charge, and an examination of the plaintiff by defendant. A sworn proof of loss would add nothing in the context of this case, and its functional equivalent already existed.

*Id*. at 148.

Here, Plaintiff has sufficiently distinguished the instant case from *Dellar* and *Reynolds*, and the cases relied on therein. First, the courts in both *Dellar* and *Reynolds* explicitly relied upon M.C.L. § 500.2832, the statutory authority for the proof of loss requirement. The *Reynolds* opinion, which the court in *Dellar* relied heavily, limited its holding to those cases "where the policy includes standard language contained in M.C.L. § 500.2832. . . requiring a written proof of loss within 60 days of the loss." *Id*. at 490. As Plaintiff states in her brief, however, M.C.L. § 500.2832 was repealed in 1992, and there is no longer a statutory duty to file the proof of loss within 60 days.

Moreover, the Court in *Dellar* allowed the issue of waiver to proceed to the jury, notwithstanding the plaintiff's failure to provide the insurer with a proof of loss, because the purpose of the proof of loss was fulfilled by other means.

Similarly, in this case, there was immediate notice by Plaintiff, an itemized estimate of the costs of repair, an estimate of the costs of repair by an agent of Defendant, an appraisal of the property, a full investigation by Defendant, and an examination under oath of the Plaintiff by

Defendant. Like in *Dellar*, the proof of loss in this case would add nothing to the context of Plaintiff's claim because its functional equivalent already exists.[1]

Finally, although both *Reynolds* and *Dellar* held that failure to provide a timely proof of loss bars recovery without regard to whether the insurer is prejudiced by the failure, neither insurance policy in those cases explicitly required a showing of prejudice, as the policy in this case does. As stated above, the proof of loss provision of Plaintiff's policy explicitly provides, "We have no duty to provide coverage under this section if you, an insured person, or a representative of either fail to comply with items a) through g) above, ***and this failure to comply is prejudicial to us.***" In its motion and at oral argument, Defendant has not provided any explanation of how Plaintiff's failure to submit a proof of loss is prejudicial to Defendant.

In support of this interpretation of Plaintiff's insurance policy, the Michigan Court of Appeals recently held that "it is a well-established principle that an insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position." *Defrain v. State Farm Mut. Auto. Ins. Co.* --- N.W.2d ----, 2011 WL 832181 (Mich. App. 2011) (quoting *Koski v. Allstate Ins. Co.*, 456 Mich. 439, 444; 572 NW2d 636 (1998)).

There remains a genuine issue of material fact as to whether Defendant was prejudiced by Plaintiff's failure to submit a proof of loss. If Defendant was not prejudiced, Plaintiff did not

---

[1] In *Jajo v. Hartford Casuality Ins. Co.*, 2002 WL 31940977 (Mich.App. 2002), one of the cases Defendant submitted in support of its position, the Michigan Court of Appeals stated, "In determining substantial compliance for a proof of loss statement, a court should consider three intended purposes of the proof of loss: (1) allowing the insurer an opportunity to investigate the loss; (2) allowing the insurer to estimate its rights and liabilities; and (3) preventing fraud." In this case, Defendant's investigation has fulfilled all three of these intended purposes.

fail to comply with the terms of the policy before she initiated her lawsuit.

**IV.     If Plaintiff Succeeds on the Merits of Her Case, Plaintiff is Entitled to the Actual Cash Value of Her Property.**

Both parties seek a declaration of their rights as they pertain to how reimbursement should be calculated.  First, Defendant contends that the proper valuation method for the amount of reimbursement is the actual cash value of the damaged property.  Defendant further asserts that any additional reimbursement would result in a windfall for Plaintiff.  At oral argument, Defendant stated that the Court should apply the broad evidence rule, such that any evidence tending to the formation of a correct estimate of the value of the damaged property might be considered by the trier of fact in determining the actual cash value.  *Davis v. National American Ins. Co.*, 78 Mich.App. 225, 259 N.W.2d 433, 438 (Mich.Ct.App.1977).  Defendant requests a "declaratory judgment stating that Plaintiff's measure of damages is premised upon a means of providing her with indemnity and must include consideration of market value." (Def's Br. at 8).

Plaintiff, however, asserts that the proper valuation method for reimbursement is that the insured should receive the actual cash value of the home ***and*** the costs for repairing the home.  In addition to denying Defendant's motion for summary judgment, Plaintiff requests that the Court make the following findings:

> Plaintiff further requests that this court hold as a matter of law that should Plaintiff repair the home within 180 days of receiving the actual cash value payment, Defendant must pay repair costs in accordance with its contractual obligations.  In the alternative, Plaintiff requests that an umpire be selected to determine the amount of loss; pursuant to the express contractual provision of the policy mandating the same.  Lastly, Plaintiff requests imposition of costs and attorney fees for having to institute this litigation.

(Plf's Resp. at 15).

Plaintiff's insurance policy and policy endorsements are unambiguous on the issue of how Defendant must reimbursement Plaintiff.  Plaintiff's policy, under Item 5 of the Section I Conditions, provides:

> **How We Pay For a Loss**
>
> Under Coverage A – Dwelling Protection, Coverage B – Other structures Protection, and Coverage C – Personal Property Protection, payment for covered loss will be by one or more of the following methods:
>
> \* \* \*
>
> b) **Actual Cash Value.**  If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis.  This means there may be a deduction for depreciation.  Payment will not exceed the Limit of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.
>
> If applicable, you may make claim for additional payment as described in paragraph c) and paragraph d) below if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.
>
> c) Building Structure Reimbursement.  Under Coverage A – Dwelling Protection and Coverage B – Other structures Protection, we will make additional payment to reimburse you for cost in excess of actual value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days if the actual cash value payment.

(Def's Br., Ex. J at 17).

Policy Endorsement AP493 modified this provision of Plaintiff's original policy and states, "This Endorsement Changes Your Policy – Keep It With Your Policy."   Endorsement AP493 further provides:

> Landlords Package Policy – Actual Cash Value Loss Settlement Endorsement – AP493

13

>In Section I Conditions, item 5, How We Pay For a Loss [quoted above], is replaced by the following:
>
>**How We Pay For a Loss**
>Loss to property by this policy to Coverage A – Dwelling Protection, Coverage B – Other structures Protection, and Coverage C – Personal Property Protection ***will be settled on an actual cash value basis***. This means there may be a deduction for depreciation. ***Payment will not exceed the smallest of***:
>
>>a)   the actual cash value of the damaged, destroyed or stolen property at the time of loss;
>>
>>b)   the amount necessary to repair or replace the damaged, destroyed or stolen property with other of like kind and quantity;
>>
>>c)   the limit of liability applicable to the damaged, destroyed or stolen property.

(Def's Reply, Doc. No. 30, Ex. A) (emphasis added).

In this case, the clause in the policy which states "we will make additional payment to reimburse you for cost in excess of actual value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment" is not consistent with the provision in the endorsement which states, "Payment will not exceed the smallest of . . . a) the actual cash value of the damaged, destroyed or stolen property at the time of loss." If the payment cannot exceed the smallest of either the actual cash value or the amount necessary to repair, as provided in Policy Endorsement AP493, then logically, the insurer may not also make additional payments above the actual cash value for repairs.

Michigan Courts have held that if rider or endorsement is irreconcilable with a clause in a policy, the rider or endorsement must control. *See Peterson v. Zurch Ins. Co.*, 57 Mich.App. 385, 392; 225 N.W.2d 776, 779 (holding that all parts of a policy, including riders and

endorsements, are to be harmonized and given effect if it can be consistently done; but if they are inconsistent and irreconcilable, the riders must control). Therefore, Policy Endorsement AP493 supersedes Item 5 of the Section I Conditions of Plaintiff's policy, titled, "How We Pay For a Loss." Based upon the express language of Policy Endorsement AP493, the Court finds that Plaintiff cannot recover both the replacement cost of the home as well as the actual cash value of the property.

While it is clear that Plaintiff may recover the actual cash value of the property, the policy, however, is ambiguous as to how actual cash value is calculated. "A contract is ambiguous when its words may be reasonably understood in different ways." *Cole v. Auto-Owners Ins. Co.*, 272 Mich.App. 50, 723 N.W.2d 922, 924 (2006). If the language of a provision in an insurance contract is ambiguous, the provision should be construed against the insurer who drafted the language and in favor of the insured. *See Blaine Construction Corp. v. Insurance Co. of North America*, 171 F.3d 343 (6th Cir.1999).

Here, Plaintiff has submitted enough evidence to show that actual cash value is calculated by taking the replacement cost of the damaged property and subtracting depreciation. Not only does the endorsement state that "there may be a deduction for depreciation," but the Michigan Supreme Court has also defined actual cash value as the replacement cost less depreciation. *Smith v. Michigan Basic Property Ins. Ass'n*, 441 Mich 181, 196, n. 28; 490 N.W. 2d 864 (1992). In fact, contrary to Defendant's contentions at oral argument, on January 21, 2009, Defendant's agents estimated the actual cash value of Plaintiff's property using this exact formula. (*See* Plf's Br., Ex. 10 at 27). Defendant's agents estimated that Plaintiff's property had a replacement cost value of $240,140.95 and an actual cash value of $150,043.24. *Id*.

15

Apparently unsatisfied by this estimate, and upon receiving an estimated market value of Plaintiff's property via a "sales comparison approach" of $5,000 on April 7, 2009, Defendant reversed course and determined that a better valuation method to determine actual cash value must include consideration of market value.

Throughout Plaintiff's brief, Plaintiff concedes that the actual cash value of her property is consistent with Defendant's estimate of $150,043.24.  Plaintiff also stated at oral argument that Defendant's estimate of $150,043.24 was an accurate estimate of the actual cash value of Plaintiff's property.  Accordingly, the Court finds that the actual cash value of Plaintiff's property is $150,043.24.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Summary Judgment.

The Court also holds that Policy Endorsement AP493 is controlling as to how Plaintiff's reimbursement is calculated.  Accordingly, Plaintiff may not be reimbursed in excess of the actual cash value of her property, whether or not she repairs the home within 180 days of receiving the actual cash value payment.

Furthermore, the Court finds that the actual cash value of Plaintiff's property is the replacement cost of the destroyed or damaged property less depreciation.  Here, the Court holds that the actual cash value of Plaintiff's property is $150,043.24, as determined by Defendant on January 21, 2009.

The Court also DENIES Plaintiff's request for attorney fees and costs, as Plaintiff has failed to provide any authority in support of her claim for fees and costs.

IT IS SO ORDERED.

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Court

Dated:  August 3, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 3, 2011, by electronic and/or ordinary mail.

                                        S/Jennifer Hernandez
                                        Case Manager